IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **MRC PERMIAN COMPANY,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| § | Case No. 2:20-CV-516-KRS-GJF |
| **v.** § | |
| § | |
| **KAISER-FRANCIS OIL COMPANY,** § | |
| § | |
| **Defendant.** § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff MRC Permian Company files its First Amended Complaint against Defendant Kaiser-Francis Oil Company, and for causes of action would respectfully show the following:

## PARTIES

1. Plaintiff MRC Permian Company ("Plaintiff" or "MRC") is a Texas corporation with its principal place of business in Dallas, Texas.

2. Defendant Kaiser-Francis Oil Company ("Defendant" or "Kaiser-Francis") is a Delaware corporation with its principal place of business in Tulsa, Oklahoma.

## JURISDICTION AND VENUE

3. MRC originally filed this lawsuit in the Fifth Judicial District Court of Eddy County, New Mexico on March 24, 2020. On May 29, 2020, Kaiser-Francis filed its Notice of Removal of this proceeding to the United States District Court for the District of New Mexico.

4. The United States District Court for the District of New Mexico has jurisdiction over the parties and the subject matter hereof.

5. Venue is proper in this District.

## NATURE OF THE SUIT

6.  Kaiser-Francis was grossly negligent and/or engaged in willful misconduct in connection with the drilling and completion of two horizontal oil and gas wells in Eddy County, New Mexico. Specifically, Kaiser-Francis badly botched acid job operations on both wells resulting in extreme corrosion and pitting of the well casings. The damaged casings prevented either well from being hydraulically fractured and completed, causing the total loss of both $7.5 million wells. Kaiser-Francis's gross negligence and/or willful misconduct has inflicted damages on MRC, a large working interest owner in both wells, in excess of $4 million. This suit is necessary because Kaiser-Francis has refused to take responsibility for its gross negligence and/or willful misconduct, which caused significant harm to MRC and the other working interest owners in the wells.

## FACTS

7.  MRC and Kaiser-Francis both own working interests in the south half of Section 15, Township 24 South, Range 28 East, N.M.P.M., Eddy County, New Mexico.

8.  MRC and Kaiser-Francis are parties to an August 1, 1989 Operating Agreement (the "Operating Agreement") governing the exploration and production of oil and gas from that acreage, a true and correct copy of which is attached hereto as Exhibit A.

9.  Kaiser-Francis is designated as the Operator[1] under the Operating Agreement and agreed to conduct all operations thereunder in a good and workmanlike manner.

---

[1] Kaiser-Francis is the successor-in-interest to Enron Oil & Gas Company, the initial Operator under the Operating Agreement.

10. MRC owns the largest working interest among several Non-Operators under the Operating Agreement, owning approximately 40% of the aggregate leasehold working interest in the oil and gas wells at issue here.

11. In the first quarter of 2018, Kaiser-Francis commenced drilling two horizontal wells under the Operating Agreement: the Willow Lake WC 15 No. 1H well and the Willow Lake WA 15 No. 1H well (collectively, the "Wells").

12. By April 2018, Kaiser-Francis had drilled the Wells to their targeted depths and lateral lengths.

13. Shortly thereafter, Kaiser-Francis began preparing the Wells for hydraulic fracturing, a process known as "toe prep."

14. The toe prep included perforating the steel pipe inserted in the wellbores, or casing, at the bottom end of the Wells, followed by an acid flush to clean up and clear out any debris left over after the perforations.

15. Kaiser-Francis, as Operator of the Wells, designed, implemented, and supervised the toe prep procedures, which were substantially the same on both Wells.

16. On May 9, 2018, as part of the toe prep, Kaiser-Francis pumped 2,000 gallons of "15% NeFe Double Inhibited acid" into the Willow Lake WA 15 No. 1H well.

17. The following day, Kaiser-Francis pumped 2,000 gallons of the same type of acid into the Willow Lake WC 15 No. 1H well.

18. Some unknown time after pumping the acid downhole on both Wells, Kaiser-Francis pumped approximately 70 barrels of "2% KCL water" in each Well in an attempt to "displace" (*i.e.*, flush) the acid out of the Wells.

19. Displacing the acid is necessary to prevent extended contact between the acid and the metal casing and casing collars.

20. It is well known within the oil and gas industry that extended exposure of acid to casing will severely damage the casing and casing collars, and therefore, all acid pumped downhole must be flushed out within a matter of hours.

21. Upon information and belief, however, Kaiser-Francis failed to completely flush the acid out of the Wells, and some significant amount of acid remained in contact with the casing in each Well.

22. After conducting the toe prep on May 9–10, 2018, Kaiser-Francis did not perform any further downhole work on the Wells until late June 2018, when it attempted to hydraulically fracture the Wells.

23. If Kaiser-Francis had promptly proceeded to the hydraulic fracturing stage of the Wells—rather than sitting idle for seven weeks—Kaiser-Francis might have mitigated the impact of its failure to flush the acid out of the Wells.

24. Instead, Kaiser-Francis knowingly allowed acid to remain in contact with the downhole casing for more than a month and a half, or was at least reckless or consciously indifferent as to whether all the acid had been displaced from the Wells.

25. Predictably, the prolonged exposure to the acid caused significant corrosion and pitting of the casing and casing collars, which ultimately led to the catastrophic failure of the casing in both Wells.

26. While attempting to hydraulically fracture both Wells, Kaiser-Francis encountered the acid damage on the casing and casing collars, which prevented the Wells from being fractured.

27. Because the acid had been left in the Wells so long, Kaiser-Francis's efforts to remedy the situation were unsuccessful, and it ultimately abandoned trying to fracture and complete the Wells, resulting in a total loss of both Wells.

28. The fact that both Wells—not just one—suffered the same catastrophic acid damage further confirms that the harm stemmed from gross negligence and/or willful misconduct by Kaiser-Francis.

29. Upon information and belief, the casing strings used in the Wells were sourced from different suppliers, further confirming the corrosion and failure was due to Kaiser-Francis' conduct, not any defect in the casing itself.

30. To make matters worse, Kaiser-Francis failed to timely notify MRC (and the other Non-Operators) of its failure to flush all the acid out of the Wells and the subsequent problems encountered during the attempts to fracture the Wells.

31. After Kaiser-Frances notified MRC that it had "encountered a problem" while attempting to hydraulically fracture the Wells, MRC requested that it be allowed to observe any future operations on the Wells.

32. MRC also requested that Kaiser-Francis provide copies of all test results, well logs, and other reports relating to the drilling and attempted hydraulic fracturing of the Wells.

33. Kaiser-Francis significantly delayed providing some of what MRC requested and failed to respond to other requests altogether.

## CAUSES OF ACTION

34. MRC incorporates all facts pleaded herein into each cause of action set forth below.

### A. Count 1 – Gross Negligence and/or Willful Misconduct

35. The acts and omissions of Kaiser-Francis as described herein constitute gross negligence and/or willful misconduct under New Mexico law.

36. Kaiser-Francis knew about the danger of failing to flush all the acid completely out of the wellbores and leaving acid in contact with the downhole casing for a prolonged period of time.

37. Despite this knowledge, Kaiser-Francis failed to take reasonable steps to ensure all the acid had been displaced from the Wells and failed to commence the hydraulic fracturing promptly after the acid jobs, waiting approximately seven weeks to attempt the fracturing.

38. As a predictable consequence, the casing and casing collars suffered severe corrosion, pitting, and other structural damage.

39. The acid-damaged casing prevented the Wells from being hydraulically fractured and completed, resulting in the complete loss of both Wells.

40. Kaiser-Francis then failed to timely provide information in response to MRC's requests and failed to give MRC access to operations on the Wells.

41. Kaiser-Francis's misconduct described herein was grossly negligent, willful, reckless, and wanton. Said acts and omissions were the proximate cause of actual damages to MRC, for which amount MRC hereby sues.

42. Kaiser-Francis's gross negligence and/or willful misconduct was malicious, reckless, wanton, and in bad faith, justifying an award of punitive damages in favor of MRC and against Kaiser-Francis.

**B.     Count 2 – Breach of Contract**

43.     The acts and omission of Kaiser-Francis as described herein constitute one or more breaches of the Operating Agreement, a true and correct copy of which is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

44.     Article V.A. of the Operating Agreement obligates Kaiser-Francis to conduct its operations in a good and workmanlike manner, which includes the duty to act as a reasonably prudent operator.

45.     Kaiser-Francis breached the Operating Agreement by failing to ensure all of the acid had been flushed out of the Wells and by allowing a significant portion of the acid to remain in contact with the casing and casing collars for an extended period of time.

46.     Article VI.D. of the Operating Agreement grants MRC access to the Contract Area (as defined therein) at all reasonable times to inspect and observe operations.  It also grants MRC access to "information pertaining to the development or operation" of the Contract Area, including Kaiser-Francis's relevant books and records.

47.     Upon request, Kaiser-Francis is obligated to furnish MRC with copies of "all forms or reports filed with governmental agencies, daily drilling reports, [and] well logs," and further obligated to "make available samples of any cores or cuttings taken from any well drilled on the Contract Area."

48.     After Kaiser-Frances belatedly notified MRC that it had "encountered a problem" while attempting to hydraulically fracture the Wells, MRC requested that it be allowed to observe any future operations on the Wells.

49.     MRC also requested that Kaiser-Francis provide copies of all test results, well logs, and other reports relating to the drilling and attempted hydraulic fracturing of the Wells.

4852-2911-2522.1

50. Kaiser-Francis significantly delayed providing some of what MRC requested and failed to respond to other requests altogether.

51. Kaiser-Francis's breaches of the Operating Agreement have been the proximate cause of actual damages to MRC, for which amount MRC hereby sues.

### ATTORNEY'S FEES

52. MRC is entitled to recover its reasonable and necessary attorney's fees and court costs incurred in the prosecution of this case under applicable law.

### REQUEST FOR A JURY TRIAL

53. MRC requests a trial by a jury in this case.

### PRAYER

WHEREFORE, MRC prays that Kaiser-Francis be cited to appear and answer herein, and that the Court determine that MRC have judgment against Kaiser-Francis for all of its actual damages in an amount to be determined by the jury, punitive damages in an amount to be determined by the jury, prejudgment and post-judgment interest at the maximum legal rate, reasonable attorney's fees and court costs, and for such other and further relief to which it may be entitled.

Respectfully submitted,

GRAY REED & MCGRAW LLP

By: */s James J. Ormiston*
    James J. Ormiston
    David Leonard
    1300 Post Oak Blvd., Suite 2000
    Houston, Texas 77056
    (713) 986-7000
    jormiston@grayreed.com
    dleonard@grayreed.com

    Bruce Koehler
    MOUNCE, GREEN, MYERS, SAFI,
    PAXSON & GALATZAN
    100 N. Stanton, Suite 1000
    El Paso, Texas 79901
    (915) 541-1513
    koehler@mgmsg.com

**Attorneys for Plaintiff/Counter-Defendant MRC Permian Company**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record on this 2nd day of October, 2020, via the Notice of Electronic Filing e-mail generated by the Court's CM/ECF system pursuant to Federal Rule of Civil Procedure 5(b)(2)(E):

Paul DeMuro
Frederic Dorwart
David W. Leimbach
Frederick Dorwart, Lawyers, PLLC
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma  74103
pdemuro@fdlaw.com
fdorwart@fdlaw.com
dleimbach@fdlaw.com

Paul Bardacke
Justin Miller
Bardacke Allison LLP
141 E. Palace Avenue, 2d Floor
Santa Fe, NM  87501
paul@bardackeallison.com
justin@bardackeallison.com

                                                          /s/ *David Leonard*
                                                David Leonard

4852-2911-2522.1