UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MRC PERMIAN COMPANY,

    Plaintiff,

v.                                                                                     Civ. No. 20-516 KRS/GJF

KAISER-FRANCIS OIL COMPANY,

    Defendant.

**ORDER ON DEFENDANT'S MOTION TO COMPEL
AND PLAINTIFF'S MOTION TO FILE A SURRESPONSE**

THIS MATTER is before the Court upon Defendant's Motion to Compel [ECF 46] and Plaintiff's Motion to File a Surresponse [ECF 57]. The Motions are fully briefed.[1] The Court heard oral argument on these motions on January 7, 2021. *See* ECF 61 (clerk's minutes). For the reasons stated on the record at the hearing, and as explained below, the Court will **GRANT IN PART AND DENY IN PART** both motions.

**I.  BACKGROUND**

The parties in this case are joint owners of oil and gas wells in the Delaware Basin, which spans southeastern New Mexico and southwestern Texas. Plaintiff claims that Defendant breached the parties' Operating Agreement by engaging in "gross negligence and/or willful misconduct" on two horizontal wells that were designed for hydraulic fracturing ("fracking"). *See* ECFs 46 at 2-3; 51 at 6. Plaintiff specifically argues that Defendant committed such an egregious breach by allowing a particular type of acid used during the "toe-prep procedure" to remain in the wells for too long:

---

[1] *See* ECFs 52, 54 (Response and Reply to Defendant's Motion to Compel); ECF 58 (Defendant's objections to Plaintiff's Motion to File a Surresponse). Pursuant to the Court's request, the parties also filed a joint notice of the status of this discovery dispute, clarifying which issues still remained ripe for decision. ECF 60. The joint notice confirmed that the disputes involving requests for production 9, 10, and 13 were now moot. *Id.* at 1-2.

> [Defendant] … allow[ed] a significant portion of the acid to remain in contact with the casing and casing collars for an extended period of time.  [Defendant] knew about the danger of failing to flush all the acid completely out of the wellbores and leaving acid in contact with the downhole casing for a prolonged period of time . . . . [yet] failed to take reasonable steps to ensure all the acid had been displaced from the Wells and failed to commence the hydraulic fracturing promptly after the acid jobs, waiting approximately seven weeks to attempt the fracturing.

ECF 51 at ¶¶ 38-40; *see also id.* at 2 (asserting that such actions resulted in "the total loss of both $7.5 million wells" and damages "in excess of $4 million").  Defendant, however, maintains that it performed "in a good and workmanlike manner in accordance with recognized industry standards" and that Plaintiff thus "cannot meet its high burden of proving the casing failures were caused by gross negligence or willful misconduct."  ECF 46 at 4-5; *see also id.* at 2 (observing that, pursuant to the parties' agreement, Defendant cannot be liable unless it engaged in "gross negligence or willful misconduct").  Defendant believes the corrosion had a different cause and is exploring the involvement of biological agents or other contributors.

Defendant now asks this Court to compel Plaintiff to produce the following items, all of which relate to *Plaintiff's* operation of wells under circumstances that are similar to those at issue in this case:

> **[Interrogatory 1]** Please list and identify by name, location, and API Number every horizontal oil or gas well MRC has operated since August 1, 2010 in which a toe-prep operation was performed.
>
> **[Interrogatory 2]** For the wells responsive to Interrogatory No. 1, please list each well by name, location, and API Number where biocide was used in connection with the toe-prep operation. This interrogatory is limited to operations performed since August 1, 2010.
>
> **[Interrogatory 3]** For each well responsive to Interrogatory No.1, please confirm whether MRC sampled and tested the microbial or bacterial content of water and/or liquids prior to pumping liquids down the wellbore. This interrogatory is limited to operations performed since August 1, 2010.
>
> **[Interrogatory 4]** Please list all instances in which MRC, as an operator, designed, supervised, or implemented a toe-prep operation. For each such instance, please

>describe in detail the operation and whether any problems occurred. This interrogatory is limited to work performed by MRC since August 1, 2010.
>
>**[Interrogatory 5]** Please list all instances in which MRC owned an interest in a well and that well suffered a downhole casing failure. For each such instance, list the well name, the API number, the operator, the nature of the failure, and the cause or suspected cause. This interrogatory is limited to instances since August 1, 2010.
>
>**[Request for Production 6]** Produce documents sufficient to identify all horizontal oil and gas wells for which MRC has designed, implemented, or supervised drilling, toe-prep, or hydraulic fracturing procedures. This request is limited to work performed by MRC since August 1, 2010.
>
>**[Request for Production 8]** Produce all manuals or procedures designed or implemented by MRC for drilling, toe-prep, or hydraulic fracturing operations on horizontal oil and gas wells. This request is limited to work performed by MRC since August 1, 2010.
>
>**[Request for Production 11]** Produce all documents relating to procedures used by MRC to prevent or mitigate the risk of MIC when performing drilling or toe-prep operations. This request is limited to operations since August 1, 2010.

ECFs 46; 46-1; 46-2; 60. In its briefing, Defendant agreed to further limit its request so that it would only apply to Plaintiff's operations on horizontal wells drilled in Lea or Eddy Counties from January 1, 2015 to the present. *See* ECFs 46 at 6; 54 at 8; *see also* ECF 57-1 at 4-5 (Plaintiff asserting that these limitations would "still implicate over 270 wells" and "not go far enough to adequately address [Plaintiff's] relevance, proportionality, and other objections").

Defendant asserts that the requested information is discoverable because it is "probative of industry standard practices at issue" and is proportional to the needs of the case, particularly given the millions in damages that Plaintiff is seeking, the risk to Defendant's reputation occasioned by this lawsuit and its allegations, and the thousands of documents Plaintiff has required Defendant to produce. ECF 46 at 9-11. Plaintiff, however, asserts that the requested information is neither relevant nor proportional. *See* ECF 52 at 2, 7 (also characterizing the requested information as

"overly broad, burdensome, … an impermissible fishing expedition, and … made for the purposes of harassment").

## II. APPLICABLE LAW

The scope of discovery as defined by Rule 26 of the Federal Rules of Civil Procedure is familiar:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). The language of Rule 26 should be "liberally construe[d]," *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007), so that trial may be "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Equal Emp. Opportunity Comm'n v. Bok Fin. Corp.*, Civil No. 11-1132 RB/LFG, 2013 WL 12047029, at *11 (D.N.M. Jan. 25, 2013) (same). But, at the same time, the Court must avoid permitting "plaintiff to engage in a 'fishing expedition' in the hope of supporting [its] claim." *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 375 (D.N.M. 2018) (quoting *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002) (unpublished)).

## III. ANALYSIS

### A. Plaintiff's Motion to File Surresponse

The Court begins it analysis by finding that Plaintiff's Motion to File a Surresponse—which was filed 18 days after Defendant's reply brief and only two days before the scheduled hearing on Defendant's motion, *see* ECFs 54, 57—was inexcusably late, which compromised

4

Defendant's ability to respond to the evidence in a meaningful manner. Furthermore, this motion included evidence in the form of a declaration supporting Plaintiff's proportionality objection, which the Court finds should have been disclosed and filed over one month earlier as part of Plaintiff's principle response [ECF 52]. In addition, Plaintiff's proportionality objection actually ripened back in October 2020—when Plaintiff originally raised this objection. Consequently, waiting to substantiate this objection with actual evidence until long after the briefing was closed and on the verge of oral argument is a sequence of which the Court disapproves. That Plaintiff at oral argument could not identify a valid reason for its delay makes the Court's decision a straightforward one.

In addition to its finding that Plaintiff's motion was inexcusably late, the Court also disagrees with Plaintiff's suggestion that allegations of overbreadth, burdensomeness, fishing, and harassment are anything other than more colorful varieties of the twin themes of relevance and proportionality set forth in Rule 26(b)(1). *See* ECFs 52 at 7; 57-1 (Plaintiff asserting that—although nowhere to be found in Rule 26(b)(1)—these four objections should nevertheless be considered distinct from, and analyzed separate and apart from, Rule 26(b)(1)'s relevance and proportionality considerations). The Court does not consider these miscellaneous objections to have a separate legal identity apart from their relationship to relevance or proportionality.

Consequently, the Court will **GRANT** Plaintiff's motion to the extent that it includes the section entitled "Response to Kaiser-Francis's Counter-Proposal" in the proposed surresponse, ECF 57-1 at 4-5, but **DENY** the motion in all other respects. The Court will therefore not consider the surresponse or its attached declaration for any purpose other than the counterproposal.

## B. Defendant's Motion to Compel

As the Court emphasized at the hearing, the Court is cognizant of its role in resolving discovery disputes at least in part is to make sure the parties have reasonable access to information and evidence so that they can have a fair fight before the trial judge on the question of admissibility at trial. Thus, today's decision does not speak to admissibility of any of this information at trial, and the Court underscores that the parties retain their full rights to litigate any such admissibility questions before the trial judge.

As explained on the record, the Court will **GRANT** Defendant's Motion to Compel and require Plaintiff to answer (1) Defendant's interrogatories numbers one through five, *see* ECF 46-1 at 4-6, and (2) Defendant's requests for production numbers six, eight, and eleven, *see* ECF 46-2 at 7–9. Plaintiff, however, must *only* provide such discovery information for a sampling of 150 horizontally drilled wells in Eddy or Lee County, New Mexico, on which Plaintiff, as the "Operator,"[2] conducted toe-prep operations between January 1, 2016, and December 31, 2019. The Court notes that this temporal window is two years—and a full 33 1/3 percent—narrower than Defendant's revised demand.

The Court finds that, as circumscribed, this information is relevant under Rule 26(b) because it relates to what the industry standard was, or was not, for toe-prep operations. Given Plaintiff's prominence as an operator in the Delaware Basin during the relevant time frame, the Court believes that the techniques that Plaintiff used (or did not use) in conducting its toe-prep procedures would educate expert witnesses, the trial judge, and the fact finder on the industry standard for these procedures. In addition, the Court finds that this information, which has been significantly narrowed from Defendant's original requests, is "proportional to the needs of the

---

[2] The Court has further narrowed interrogatory 5, which sought information on *all* wells in which Plaintiff "owned an interest," so that it applies only to those wells in which Plaintiff was the operator.

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court considers the interrogatories and requests for production at issue to be targeted at discrete, readily-identifiable sources of information that Plaintiff – a major energy producer with presumably state of the art information management practices – should be able to consult without anything reasonably approaching undue burden.

### C. Each Side Must Bear Its Own Expenses

The Court finds that Plaintiff's objections and responses to Defendant's original discovery requests and its motion to compel were "substantially justified," Fed. R. Civ. P. 37(a)(5)(A)(ii), particularly given the breadth of the original interrogatories and requests for production. Furthermore, that Defendant itself continued to significantly narrow the scope of its discovery requests during the evolution of the motion litigation persuades the Court that an award of any expenses would be unjust under Rule 37(a)(5)(A)(iii). Furthermore, to the extent that Defendant's motion is denied, the Court similarly finds that the relief Defendant sought was nonetheless "substantially justified," Fed. R. Civ. P. 37(a)(5)(B). Consequently, the Court will require each side to bear its own expenses related to this discovery dispute.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel [ECF 46] is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) **GRANTED** to the extent that Plaintiff shall, **no later than February 8, 2021,** answer both (a) Defendant's interrogatories numbers one through five, *see* ECF 46-1 at 4-6, and (b) Defendant's requests for production numbers six, eight, and eleven, *see* ECF 46-2 at 7–9. Plaintiff, however, must *only* provide such

information for a sampling of 150 horizontally drilled wells in Eddy or Lee County, New Mexico, on which Plaintiff, as the "Operator," conducted toe-prep operations between January 1, 2016, and December 31, 2019. As soon as reasonably possible, Plaintiff shall provide Defendant with a list of all wells meeting these criteria, and Defendant shall select the 150 sample wells from this list.

(2) **DENIED** to the extent that Defendant seeks information beyond that which the Court has expressly authorized in paragraph (1) above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to File a Surresponse [ECF 57] is

**GRANTED IN PART AND DENIED IN PART** as follows:

(1) **GRANTED** to the extent that it includes a response to Defendant's counterproposal, *see* ECF 57-1 at 4–5.

(2) **DENIED** as to the remainder of the Plaintiff's motion.

**IT IS FINALLY ORDERED** that each side shall bear its own expenses related to this discovery dispute.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

8