IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MRC PERMIAN COMPANY, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> KAISER-FRANCIS OIL COMPANY, § <br> § <br> Defendant. § | Case No. 2:20-CV-516-KRS-GJF |

### PLAINTIFF'S OPPOSED MOTION FOR LEAVE TO DESIGNATE A REBUTTAL EXPERT WITNESS

Plaintiff MRC Permian Company ("MRC") files this motion for leave to designate Richard B. Eckert, with DNV GL USA, Inc., to offer expert opinions in rebuttal to Ryan Pagel, one of the experts designated by Defendant Kaiser-Francis Oil Company ("Kaiser-Francis"). Pursuant to the Court's procedures, MRC requests a hearing on this motion.

#### SUMMARY

1. On March 19, 2021, Kaiser-Francis designated its expert witnesses and provided expert reports, including a report from Ryan Pagel. Mr. Pagel opines that the sole cause of the corrosion damage to the casing in both wells at issue was a phenomenon known as microbially induced corrosion ("MIC"). Prior to the issuance of Mr. Pagel's report, Kaiser-Francis had not declared MIC to be the cause of the corrosion, and, in fact, its internal documents and pre-litigation statements to MRC conceded that prolonged exposure to hydrochloric acid was the most likely cause of the damage to the casing. Now in litigation, Kaiser-Francis has changed its position.

2. Kaiser-Francis offers Mr. Pagel's MIC opinion as a *defense* to MRC's contention, supported by the expert opinion of John Ely, that Kaiser-Francis was grossly negligent in allowing significant amounts of hydrochloric acid to remain in the wellbores, which caused the corrosion,

prevented the wells from being hydraulically fractured (*i.e.*, completed), and resulted in the total loss of both wells. Accordingly, MRC should be granted leave to designate an expert to specifically rebut Mr. Pagel's MIC opinions.[1]

3. The pretrial scheduling order, as amended, does not include a deadline for designating true rebuttal experts. *See* Doc. No. 31 (Order Setting Pretrial Deadlines and Briefing Schedule), as amended by Doc. No. 66 (Order Extending Certain Pretrial Deadlines), collectively, the "Pretrial Order." Rather, the Pretrial Order includes only the following two expert deadlines:

- February 19, 2021 – deadline for plaintiff and defendant to identify any expert witness intended to support a claim for affirmative relief, and provide corresponding expert reports and disclosures.

- March 19, 2021 – deadline for plaintiff and defendant to identify any rebuttal experts and provide corresponding expert reports and disclosures.

*See* Doc. No. 66 (Order Extending Certain Pretrial Deadlines). This two-step process called for the designation of experts to support affirmative claims for relief, followed by designation of experts to "rebut" the first group of experts. There was no third deadline for designating experts to rebut any defensive theories raised by the second group of experts. Thus, when Kaiser-Francis designated Mr. Pagel on March 19, MRC was left without a mechanism under the Pretrial Order to designate a rebuttal expert to challenge Mr. Pagel's defensive theory—not formally articulated before that date—that MIC damaged the well casings.

4. Kaiser-Francis has chosen to defend this case, in part, through Mr. Pagel's opinion that MIC, not the hydrochloric acid that Kaiser-Francis left in the wellbores, caused the casing damage. In order to rebut that defensive theory, MRC should be granted leave to designate Mr. Eckert, a Senior Principal Engineer with DNV GL USA, Inc., to specifically address Mr. Pagel's

---

[1] Although both Mr. Eckert and his colleague, David M. Norfleet, Ph.D., P.E., signed the June 15, 2021 rebuttal report, Mr. Eckert is the primary author of the report and will be the testifying expert at trial. Accordingly, MRC seeks leave to designate only Mr. Eckert as a testifying expert in this case to rebut the opinions offered by Mr. Pagel.

MIC opinions. A copy of Mr. Eckert's June 15, 2021 expert report, which was provided to Kaiser-Francis on June 16, is attached hereto as <u>Exhibit 1</u>. A copy of Mr. Pagel's report is attached as <u>Exhibit 2</u>.

**FACTUAL BACKGROUND**

5. This suit concerns two horizontal oil and gas wells in Eddy County, New Mexico drilled by Kaiser-Francis in its capacity as Operator under an August 1, 1989, Operating Agreement (the "Operating Agreement"). MRC holds the largest working interest among several Non-Operators under the Operating Agreement, owning approximately 40% of the aggregate leasehold working interest in the wells at issue.

6. In the first quarter of 2018, Kaiser-Francis commenced drilling the Willow Lake WC 15 No. 1H well and the Willow Lake WA 15 No. 1H well (collectively the "Wells"). By April 2018, Kaiser-Francis had drilled the Wells to their targeted depths and lateral lengths. Shortly thereafter, Kaiser-Francis began preparing the Wells for hydraulic fracturing, a process known as a "toe prep." The toe prep included perforating the casing at the end (toe) of the lateral followed by an acid flush to clean up and clear out any debris left over after the perforations. Kaiser-Francis, as Operator of the Wells, designed, implemented, and supervised the toe prep procedures, which were substantially the same on both Wells. MRC, as a Non-Operator, did not design or carry out any procedures on the Wells whatsoever.

7. Kaiser-Francis's toe prep procedures called for the use of coiled tubing to pump and flush hydrochloric acid, which MRC contends was not in compliance with industry standard in 2018. During the toe prep operations, Kaiser-Francis pumped 2,000 gallons of hydrochloric acid through coiled tubing into each of the Wells. Shortly after pumping the acid through the

coiled tubing string on both Wells, Kaiser-Francis pumped approximately 70 barrels of water down the coiled tubing in each Well in an attempt to "displace" (*i.e.*, flush) the acid out of the Wells.

8. Fully displacing the acid is essential to prevent extended contact between the acid and the metal casing and casing collars, which often leads to corrosion. Kaiser-Francis, however, failed to completely flush the acid out of the Wells. The evidence indicates the coiled tubing was not pulled up the wellbores above the acid before the water was pumped through the coiled tubing in an effort to displace the acid through the perforations and into the reservoir. There is also evidence that the Wells were "swabbed" by pulling the coiled tubing up too fast, which caused a suction effect that drew the acid higher in the wellbores. As a result, a significant amount of acid remained in the wellbores in contact with the production casing in each Well.

9. After conducting the toe preps on May 9–10, 2018, Kaiser-Francis did not perform any further downhole work on the Wells until June 30, when it attempted to hydraulically fracture the Wells. This significant delay is a key factor because if Kaiser-Francis had promptly proceeded to hydraulically fracture the Wells—rather than sitting idle for seven weeks—it might have mitigated the impact of its failure to flush out the acid. Instead, Kaiser-Francis allowed acid to remain in contact with the production casing for 52 days.

10. Predictably, the prolonged exposure to the acid caused significant corrosion and pitting of the casing and casing collars, which ultimately led to the catastrophic failure of the casing in both Wells. The Wells were abandoned which resulted in a total loss of both Wells on which over $10 million had been spent.

11. Before this lawsuit was filed, and as reflected in internal documents produced by Kaiser-Francis in this case, Kaiser-Francis's engineers and executives agreed that acid likely caused the corrosion of the casing in the Wells. For example:

- In emails dated July 17, 2018, Kaiser-Francis engineers and executives agreed acid was the "culprit" of the corrosion. *See* Exhibit 3.

- In a post-incident meeting between Kaiser-Francis and MRC executives on December 6, 2018, Kaiser-Francis's President, Tom Redman, reported to MRC that acid likely caused the corrosion. *See* Exhibit 4, M. Hairford depo. at 160:15 – 163:4.

- In a report to the owner of Kaiser-Francis dated January 1, 2019, Kaiser-Francis executives concluded that "the most probable cause" of the corrosion was acid. *See* Exhibit 5.

12. In its pleadings and initial disclosures, Kaiser-Francis did not identify MIC as the alleged cause of the casing corrosion. Although Kaiser-Francis's completions engineer, David Zerger, testified in his February 22, 2021 deposition that he had "changed his mind" and now believed that MIC—and not hydrochloric acid—had caused the corrosion, Kaiser-Francis's counsel instructed Mr. Zerger to not provide any further details regarding the basis of his new causation theory. *See* Exhibit 6, D. Zerger depo. at 37:5 – 46:11. Accordingly, Kaiser-Francis did not declare its new MIC defense until it designated Mr. Pagel and provided his report on March 19, 2021. Kaiser-Francis's new causation theory materially changes the scope of Kaiser-Francis's defense, which justifies leave for MRC to designate a rebuttal expert.

## PROCEDURAL BACKGROUND

13. MRC filed this lawsuit in the Fifth Judicial District Court of Eddy County, New Mexico in March 2020. In May 2020, Kaiser-Francis removed the case. The case is set for jury trial beginning November 15, 2021. *See* Doc. No. 79 (Amended Trial Scheduling Order).

14. In support of its affirmative liability claims, MRC designated John Ely as an expert witness on February 19, 2021. *See* Exhibit 7 (Expert Report of John Ely). Mr. Ely is an industry veteran with over fifty years of oilfield experience, who details in his report how Kaiser-Francis failed to conduct the toe prep operations in a good and workmanlike manner and acted with gross negligence. *See* Exh. 7 at pp. 7–8. Mr. Ely concludes that a significant amount of hydrochloric acid was left behind in the wellbores, which predictably caused the corrosion that led to the total loss of both Wells. *See* Exh. 7 at pp. 28–33.

15. Mr. Ely's report also includes a brief discussion about MIC. *See* Exh. 7 at p. 37. Mr. Ely concludes MIC could not have caused the casing corrosion because the downhole temperatures were too high to accommodate the microorganisms necessary for MIC. *Id.* Mr. Ely addressed MIC out of an abundance of caution because Kaiser-Francis had made passing references to it at various junctures in this case. For example, in a motion to compel filed on November 13, 2020, Kaiser-Francis stated in a footnote that it was "investigating whether the casing failing was caused by a form of microbial induced corrosion." *See* Doc. No. 46 at p. 7. Kaiser-Francis did not mention MIC—as a defensive causation theory or otherwise—in the parties' lengthy *Joint Status Report*. *See* Doc. No. 27 (Joint Status Report). Nor does Kaiser-Francis mention MIC in any of its pleadings. Despite ample opportunity, Kaiser-Francis never disclosed its MIC causation defense until March 19, 2021 when it designated Mr. Pagel as an expert witness and produced his report.

16. Mr. Pagel's MIC causation opinions go far beyond the limited scope of Mr. Ely's opinion excluding MIC as a potential cause of the corrosion damage based on the temperatures at the depths in the casing where the corrosion occurred. In fact, there is only one instance where Mr. Pagel actually addresses Mr. Ely's opinion, when Mr. Pagel discusses the role of temperature

and the formation of MIC.  *See* Exh. 2 at p. 10.  Rather, Mr. Pagel's opinions are based almost exclusively on morphology (*i.e.*, visual appearance), which was first introduced into this case via Mr. Pagel's report and is easily rebutted by Mr. Eckert's report.  *See* Exh. 1 at pp. 2 – 6; Exh. 2 at pp. 5 – 11.

17.  Soon after the expert designations, the parties agreed to attend mediation on April 20, 2021 in Dallas.  Although the mediation has not yet resulted in a settlement, the mediator did not declare an impasse and the parties are continuing to engage in settlement negotiations, including a post-mediation, in-person settlement meeting.  To facilitate the settlement discussions, the parties agreed to temporarily stand down on discovery, and agreed to continue the trial date and extend certain pretrial deadlines.  *See* Doc. No. 77 (Joint Motion for Revised Pretrial Deadlines and New Trial Date).  Under these circumstances, MRC proceeded expeditiously to identify Mr. Eckert as an expert capable of rebutting Mr. Pagel, and asked Mr. Eckert to analyze the relevant materials and issue a report addressing Mr. Pagel's MIC conclusions.  In addition, MRC notified Kaiser-Francis on or about May 27, 2021 of its intent to seek leave to designate a rebuttal expert to address Mr. Pagel's MIC opinions.  *See id.* at n. 1.  On June 16, 2021, MRC furnished Kaiser-Francis with a copy of Mr. Eckert's rebuttal report (the "Rebuttal Report").  *See* Exh. 1; Doc. No. 80 (Certificate of Service).

18.  As detailed in the Rebuttal Report, Mr. Eckert is a metallurgist and corrosion engineer with over 39 years of experience investigating corrosion and MIC in the oil and gas industry.  *See* Exh. 1 at p. 1.  He has published over 50 papers on MIC.  *Id.*  His colleague, Dr. Norfleet, holds a Ph.D. in Material Science and Engineering and is a licensed engineer.  *Id.* at 25.  Dr. Norfleet also has substantial experience investigating corrosion in the oil and gas industry.  *Id.*

19. The Rebuttal Report directly responds to Mr. Pagel's report and assesses "the technical and scientific validity of the opinions presented by Mr. Pagel in regard to his claims about MIC and the severe corrosion damage to the 5-1/2" casing in the [Wells]." *See* Exh. 1 at p. 2. The Rebuttal Report presents five opinions that directly respond to and rebut Mr. Pagel's opinions:

| | |
|---|---|
| Opinion #1: | Mr. Pagel's claim that the casing damage morphology (i.e., visual appearance) conclusively determines the cause to be microbiologically influenced corrosion (MIC) is unfounded. MIC cannot be diagnosed by corrosion morphology alone – it requires multiple lines of evidence. |
| Opinion #2: | The extremely high corrosion rates observed for the casing in both wells are not comparable with documented corrosion rates due to MIC, but instead are consistent with corrosion caused by 15% hydrochloric acid (HCl) at 122°F. Reliably documented MIC corrosion rates are 50 times lower than the corrosion rate experienced by the casing here, thus it is unreasonable to assume the casing damage was caused by MIC. |
| Opinion #3: | The very low pH resulting from the acid used in the toe prep operation is unsuitable for the life of most microorganisms, including the sulfate-reducing bacteria (SRB) proposed by Mr. Pagel as the cause of the corrosion damage. There is no evidence to support the role of bacteria in the corrosion. |
| Opinion #4: | The corrosion distribution patterns on the corroded casing can be influenced by multiple factors that Mr. Pagel did not consider, and cannot be arbitrarily attributed to MIC. |
| Opinion #5: | Based on the extent of casing corrosion damage, the extremely high corrosion rates that occurred over 52 days, and the absence of evidence to support other plausible corrosion mechanisms, including MIC, the corrosion on the casing is most likely the result of contact with hydrochloric acid – not MIC. |

*See* Exh. 1 at p. iii.

## MRC SHOULD BE GRANTED LEAVE
## TO DESIGNATE AN EXPERT TO REBUT THE OPINIONS OF RYAN PAGEL

20. Federal Rule of Civil Procedure 37(c)(1) grants the District Court "broad discretion" to permit the late disclosure of a witness if the failure to timely designate the witness was substantially justified or is harmless. *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). This liberal approach is consistent with Federal Rule of

8

Civil Procedure 16(b)(4), which permits modification of pretrial deadlines upon a showing of good cause. *See Summers v. Missouri Pacific R.R. System*, 132 F.3d 599, 604–05 (10th Cir. 1997) ("Nevertheless, while the pretrial order defines a lawsuit's boundaries in the trial court and on appeal, total inflexibility is undesirable.") (internal quotations omitted).[2]

21. In determining whether the failure to disclose was substantially justified or harmless under Rule 37(c)(1), courts in the Tenth Circuit consider four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993; *see also Navajo Nation v. Urban Outfitters, Inc.*, No. 12-cv-0196 BB/LAM, 2016 WL 3475339, *1 (D.N.M. Feb. 9, 2016). A movant is not required to satisfy all four factors in order for leave to be appropriate. *See Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1212 (10th Cir. 2002). All four factors weigh in favor of granting MRC leave to designate a rebuttal expert.

### A. Kaiser-Francis will not be prejudiced or surprised by MRC's designation of Mr. Eckert to rebut Mr. Pagel's opinions.

22. When Mr. Ely issued his expert report on February 19, 2021, MRC was unaware Kaiser-Francis would contend, as a defense to liability, that MIC was the sole cause of the corrosion. Kaiser-Francis asserts (through Mr. Pagel's recent opinions) that because the corrosion was caused by MIC, and not by the hydrochloric acid it left in the wellbores for 52 days, Kaiser-Francis was not grossly negligent. Thus, MRC seeks to designate Mr. Eckert to specifically rebut the defensive causation theory raised for the first time in any formal way in Mr. Pagel's report.

---

[2] Since the Pretrial Order did not set a deadline for designation of true rebuttal experts, and the parties did not stipulate to such a deadline, MRC arguably had thirty days after disclosure of Mr. Pagel's opinions (*i.e.*, until April 18, 2021) to designate a rebuttal expert. See FED. R. CIV. P. 26(a)(2)(D)(ii). That thirty-day window, however, coincided with the parties' agreement to stand down on development of the case in order to facilitate the mediation and related settlement discussions, as described in paragraph 17.

4835-3275-1342.1

*See* BLACK'S LAW DICTIONARY 1334 (8th ed. 2005) (defining rebuttal witness as one who "contradicts or attempts to contradict evidence previously presented"); *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible."). Because Kaiser-Francis did not assert or explain this new causation theory until it served Mr. Pagel's report, MRC had no way to pre-rebut the MIC opinions. *103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1216 (10th Cir. 2004) (finding exclusion of expert report as untimely to be an abuse of discretion because the party seeking leave was in an "impossible situation of attempting to rebut something that it had not yet seen.").

23.     As stated above, Mr. Pagel's MIC causation theory is presented by Kaiser-Francis as a *defense* to MRC's affirmative claims. Thus, Kaiser-Francis cannot credibly argue that it is surprised that MRC would present a rebuttal of the MIC defense.

24.     In addition, Kaiser-Francis will not suffer any prejudice because there is more than ample time remaining to conduct discovery and seek to challenge Mr. Eckert's rebuttal opinions. Discovery is ongoing with a current cut-off of August 27, 2021; the parties have not yet deposed any experts; the deadline to file *Daubert* motions is September 14, 2021; and trial is set for November 15, 2021, which is about 150 days from now. The default expert disclosure deadline under Fed. R. Civ. P. 26(d)(D) is 90 days before trial, reflecting a general policy that expert disclosures 90 days before trial provide fair notice. And, the Tenth Circuit has approved leave to designate experts with far less time before trial. *See, e.g., Summers*, 132 F.3d at 605 (allowing leave to designate expert 80 days before trial) (citing *National Distillers and Chem. Corp. v. Brad's Mach. Prods., Inc.*, 666 F.2d 492, 497 (11th Cir. 1982) (allowing leave to designate expert 21 days

10

before trial) and *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971) (allowing leave to designate expert 8 days before trial)).

25.  Kaiser-Francis will not be surprised or prejudiced by MRC's designation of an expert witness to rebut Mr. Pagel's MIC opinions. Conversely, MRC will be prejudiced at trial if it is denied the ability to offer a detailed rebuttal of Mr. Pagel's defensive causation theory.

**B.  MRC's designation of a rebuttal expert will not disrupt the trial setting.**

26.  The discovery deadline is August 27, 2021 and trial is set for November 15, 2021. *See* Doc. No. 79 (Amended Trial Scheduling Order). As such, granting MRC leave to designate Mr. Eckert to rebut Mr. Pagel's MIC opinions will not disrupt or delay the trial setting, and any contention otherwise would be specious.

**C.  MRC's request for leave to designate a rebuttal expert is made in good faith.**

27.  Immediately after receiving Mr. Pagel's report, MRC set about to identify and retain an expert to rebut Mr. Pagel's MIC opinions. After retaining Mr. Eckert, MRC promptly provided him with Mr. Pagel's report and the other relevant materials, and asked Mr. Eckert to prepare a rebuttal report. MRC took these actions while the parties were engaged in mediation and follow-up settlement discussions, during which the parties had agreed to refrain from further discovery. On May 27, MRC notified Kaiser-Francis of its intent to seek leave to designate a rebuttal expert, and on June 16, MRC provided Kaiser-Francis with a copy of Mr. Eckert's rebuttal report. These facts demonstrate MRC's good faith and further justify the granting of leave to designate a rebuttal expert.

28.  MRC's good faith is also demonstrated by the surrounding circumstances. Kaiser-Francis never asserted its MIC defense in any serious way prior to producing Mr. Pagel's report. All of Kaiser-Francis's pre-trial statements, internal communications produced in discovery, and

11

court filings through serving Mr. Pagel's report on March 19, reasonably led MRC to believe that Kaiser-Francis contended to defend this case by arguing that its leaving acid in the wellbores was a regrettable accident, but did not rise to the level of gross negligence. Kaiser-Francis has now changed course, and MRC is responding in good faith to the newly disclosed defensive theory.

### PRAYER

For the foregoing reasons, MRC respectfully requests the Court grant leave for MRC to designate Richard B. Eckert as a rebuttal expert witness in this case, and grant such further relief to which MRC may be entitled.

DATED: June 22, 2021

Respectfully submitted,

GRAY REED & MCGRAW LLP

By: /s James J. Ormiston
James J. Ormiston
David Leonard
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000
jormiston@grayreed.com
dleonard@grayreed.com

Bruce Koehler
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
100 N. Stanton, Suite 1000
El Paso, Texas 79901
(915) 541-1513
koehler@mgmsg.com

**Attorneys for Plaintiff/Counter-Defendant MRC Permian Company**

4835-3275-1342.1

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Paul DeMuro, lead counsel for Kaiser-Francis, and he stated that Kaiser-Francis is opposed to the relief requested by this motion.

*/s/ James J. Ormiston*
James J. Ormiston

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record on this 22nd day of June, 2021, via the Notice of Electronic Filing e-mail generated by the Court's CM/ECF system pursuant to Federal Rule of Civil Procedure 5(b)(2)(E):

Paul DeMuro
Frederic Dorwart
David W. Leimbach
Frederic Dorwart, Lawyers, PLLC
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma  74103
pdemuro@fdlaw.com
fdorwart@fdlaw.com
dleimbach@fdlaw.com

Paul Bardacke
Justin Miller
Bardacke Allison LLP
141 E. Palace Avenue, 2d Floor
Santa Fe, NM  87501
paul@bardackeallison.com
justin@bardackeallison.com

*/s/ James J. Ormiston*
James J. Ormiston
